# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

JOCELYN MARTINEZ,

               Plaintiff,

    v.

FRANK BISIGNANO, Commissioner of Social Security[1]

               Defendant.

_____/

Case No.  1:24-CV-01397-KES-EGC

**FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE DENIED AND THE FINAL DECISION OF THE COMMISSIONER OF SOCIAL SECURITY BE AFFIRMED**

(Doc. 13)

14-DAY DEADLINE

## I.    INTRODUCTION

Plaintiff Jocelyn Martinez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act (the "Act").  (Doc. 1).  Plaintiff's claim for disability stems from schizophrenia.  (Administrative Record ("AR") 18).  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Erin Guy Castillo, United States Magistrate Judge.[2]

---

[1]  On May 7, 2025, Frank Bisignano was named Commissioner of the Social Security Administration. *See* https://www.ssa.gov/history/commissioners.html.  He is therefore substituted as the defendant in this action.  *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant.").

[2]  The matter is referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and E.D. Cal. Local Rule 302.

For the reasons set forth below, the undersigned recommends that Plaintiff's motion for summary judgment be denied, and that the final decision of the Commissioner be affirmed.

## II.    BACKGROUND

Plaintiff was born in 2000.  (AR 264).  She earned a high school diploma and is enrolled at Fresno City College.  (AR 39).  Plaintiff has never held a job and has no prior relevant work.  (AR 39-40).

On August 6, 2018, Plaintiff filed an application for DIB and SSI, alleging that she became disabled on April 1, 2016.  (AR 264-75).  Plaintiff's claim for disability stems from schizophrenia, other psychotic conditions, and a learning disability.  (AR 58).  Plaintiff was determined to be disabled beginning on July 25, 2018.  (AR 17).  On January 31, 2022, Plaintiff was found no longer disabled since January 1, 2022.  (*Id.*).  The determination was upheld upon reconsideration after a disability hearing by a State agency Disability Hearing Officer.  (*Id.*).  On December 19, 2023, the Administrative Law Judge ("ALJ") issued an unfavorable decision denying Plaintiff's claim on the basis that Plaintiff's disability ended on January 1, 2022, and Plaintiff has not become disabled again since that date.  (AR 25).  This appeal followed.

Plaintiff asks that the Court reverse the decision of the Commissioner, find that Plaintiff is entitled to disability benefits under the provisions of the Social Security Act, or remand the case for further hearing.  (Doc. 1 at 2-3).

A.    **Relevant Evidence of Record[3]**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**1.    Medical Source Opinion of Treating Psychiatrist Sadeed Jawad, M.D.**

Clinical psychiatrist Sadeed Jawad, M.D., provided a medical report dated January 13, 2022.  (AR 837-38).  Dr. Jawad's medical report states, in its entirety, that:

> Please be advised that Ms. Martinez is being treated at our program for the mental health diagnoses listed below.  She has been a patient at our clinic since 02/2018.  Her diagnoses are of chronic nature with remitting and relapsing course.  We have adjusted her medications recently to target her symptoms.  However, given the chronic nature of the diagnoses her

---

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

symptoms are likely to continue to impact her functioning especially at the social level.

-    Chronic Schizophrenia

(AR 838).

**B.    Administrative Proceedings**

The Commissioner granted Plaintiff's application for benefits initially on August 27, 2018. (AR 65).  After a continuing disability review, the Commissioner determined that Plaintiff was no longer disabled as of January 1, 2022.  (AR 68-87).  On reconsideration, the Commissioner upheld their determination on July 26, 2022.  (AR 141-45).  Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 146–53).

The ALJ concluded Plaintiff was not disabled at any time after January 1, 2022.  (AR 25). Plaintiff sought review of this decision before the Appeals Council, which denied review on September 11, 2024.  (AR 1-6).  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. § 404.981.

**1.   Plaintiff's Testimony**

On March 23, 2023, ALJ Shiva Bozarth held an in-person hearing.  (AR 32-57).  Plaintiff appeared at the hearing with her non-attorney representative Anthony Gonzales and testified as to her alleged disabling conditions and work history.  (AR 39-52).  Kathleen Macy-Powers, an impartial vocational expert, appeared telephonically.

In response to the ALJ's questions, Plaintiff testified that she graduated from high school in 2019 and received a diploma.  (AR 39).  Plaintiff testified that she has never held a job and is currently enrolled in school at Fresno City College.  (*Id.*).  When asked whether she has attempted to work since her DIB and SSI benefits were stopped, Plaintiff testified that she has not attempted to work.  (AR 50).  Plaintiff testified that there was no work of any kind that she thought she could do.  (*Id.*).

Plaintiff testified that she was, at the time of the hearing, enrolled in two classes.  (AR 43 ("Right now I'm taking communication and bicycle."))  Plaintiff has previously taken a horticulture class and reported that she found it emotionally and academically difficult but passed with a C.  (AR 45-46).  Plaintiff sometimes receives services from the disabled student services program at the

college, though such services are not available for every class. (AR 44, 46).

Plaintiff testified that she lives with her mom and her mom's friend. (AR 40). Plaintiff does not make her own meals beyond preparing simple foods like ramen noodles in the microwave or a sandwich. (AR 40-42). Plaintiff states that she does not know how to cook and gets irritated because she "cannot read the instructions." (*Id.*). Plaintiff reported that she does not know how to count money and that her mother handles Plaintiff's finances. (AR 51). Plaintiff does not have a driver's license and cannot take public transportation because "[i]t's too hard to remember the streets." (AR 41-42). Plaintiff relies on her grandparents to drive her to school. (AR 41). Plaintiff does not go shopping on her own. (AR 50-51).

Plaintiff is authorized to receive In-Home Support Services ("IHSS") assistance. (AR 42). Plaintiff's grandmother works as her IHSS caregiver and comes to her house five days a week to assist Plaintiff with laundry, cleaning her room, preparing food, and taking her to school. (*Id.*). Plaintiff testifies that she does not know how to do her own laundry. (*Id.*). When asked what she does in a typical day, Plaintiff reports that she watches television, sleeps, and eat meals prepared by her grandmother. (AR 46). When asked whether she has been able to leave her home alone within the last year and a half to get together with friends or relatives, Plaintiff responds that she "do[esn't] have any friends" and doesn't go out alone. (AR 48). Plaintiff states that when she does go out, she goes with her mom or grandparents. (*Id.*). Plaintiff does not belong to a church or any other kind of social group. (AR 49).

Plaintiff testifies that she receives a monthly Invega injection and takes additional medication "for sleeping and allergies" including Trazadone. (AR 47). Plaintiff does not appear to receive any other form of mental health care beyond the monthly Invega injections. (AR 37, 47). Plaintiff testifies that she sometimes sees or hears things that other people do not see or hear but is unable to clearly state the frequency of these occurrences. (AR 48) ("Most of the time, yes, and no, so it's like in the middle, like it's yes, I hear it, no, I hear it, yes, I hear it, no, I hear it."). Plaintiff was able to communicate that she is more likely to hear voices when she is alone or "feeling lonely." (*Id.*). ("I mean, yes, like when I'm feeling lonely, I hear stuff. Like on alone time, I hear stuff, but when I was with my family, I don't hear stuff.") Plaintiff testifies that she experiences side effects from the

4

monthly Invega injection, including sleeplessness and sleep paralysis of such intensity that she can only sleep with the light on and when her mom is sleeping with her. (AR 49) ("It's like I cannot sleep at nighttime. I have my mom sleep with me because I sleep with the light on with my mom with me. I cannot sleep because sleeping paralysis . . . If I sleep sideways, someone is star[ing] at me.") Plaintiff testifies that she gets these side effects every month, and they continue for seven days. (AR 50).

### 2. Vocational Expert's Testimony

A Vocational Expert ("VE") also testified at the hearing. (AR 52-56). The ALJ elicited testimony from the VE regarding hypothetical questions. (AR 52-56).

For the first hypothetical, the ALJ asked whether there would be any jobs in the national economy for an individual who is (1) limited to simple and routine tasks, (2) limited to only occasional contact with co-workers and supervisors, not in a teamwork setting, (3) could have no contact with the general public, and (4) able to work at a "production rate pace," such that the individual "would need to work in an assembly line or similar environment where they didn't have to change job duties on a regular basis and could basically perform the same set of job functions on an ongoing basis throughout the day." (AR 53-54). The VE indicated that there would be jobs for this hypothetical person, including working as a packager (DOT code 920.587-018), salvage laborer (DOT code 929.687-022), or assembler (DOT code 729.687-010). (AR 54-55).

In the second hypothetical, the ALJ asked whether the same hypothetical individual would be able to perform such jobs if the individual "would need to be reminded to stay on task by a supervisor once per half hour." (AR 55). The VE testified that "[i]f that were to continue after the expected time to learn that job, consistent and ongoing, that would become work-preclusive." (*Id*.).

In the third hypothetical, the ALJ asked whether the same hypothetical individual would be able to perform such jobs if the individual would be absent from work two days per month on an unscheduled basis due to symptoms of anxiety or fear. (AR 55). The VE testified that no jobs would be available if such limitations were "consistent and ongoing." (*Id.*).

### C.    The ALJ's Decision

In a decision dated December 19, 2023, the ALJ found that Plaintiff was no longer disabled.

(AR 14-31).

To determine if Plaintiff continues to be disabled, the ALJ conducted the seven-step disability analysis set forth in 20 C.F.R. § 416.994. (AR 18-25). The ALJ determined that the most recent favorable medical decision finding that Plaintiff was disabled is the August 27, 2018 determination (i.e., the "comparison point decision" or "CPD"). (AR 18). The ALJ found that at the time of the CPD, Plaintiff had the following medically determinable impairment: schizophrenia. (*Id.*). The ALJ noted that since January 1, 2022, Plaintiff had the following medically determinable impairments, which remain Plaintiff's current impairments: schizophrenia and borderline intellectual functioning. (*Id.*).

At step one, the ALJ found that since January 1, 2022, Plaintiff has not had an impairment or combination of impairments which meets or medically equals the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.925 and 416.926). (AR 19). At step two, the ALJ found that medical improvement occurred on January 1, 2022, relating to a decrease in medical severity of Plaintiff's depressive and psychotic symptoms due to the Invega injections. (AR 20). The ALJ pointed to the fact that Plaintiff was able to complete high school, is a student at Fresno City College, that her "mental status examinations have greatly stabilized," "[s]he no longer experiences hallucinations or paranoia," "[s]he has not had any inpatient hospitalizations," and "[s]he is now taking Invega injections." (*Id.*). At step three, the ALJ found the medical improvement is related to the ability to work, because, by January 1, 2022, Plaintiff's CPD impairment no longer met or medically equaled the same listing that was met at the time of the CPD. (*Id.*). Thus, the ALJ skipped to step five and found that, since January 1, 2022, Plaintiff continued to have a severe impairment or combination of impairments consisting of schizophrenia and borderline intellectual functioning. (*Id.*).

At step six of the sequential analysis, the ALJ assessed Plaintiff's RFC based on the current impairments and made the following finding:

> Since January 1, 2022, based on the current impairments, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: she can perform simple and routine tasks. She can have occasional contact with supervisors and coworkers, but not in a teamwork setting. She can have no contact with the public. She would

need to work at a production rate pace, in an assembly line or similar, in which she performed the same tasks (the same set of job functions) throughout the day with very little deviation.

(AR 20-21).   Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms," the ALJ rejected Plaintiff's subjective testimony as to "the intensity, persistence and limiting effects of these symptoms" as being "not entirely consistent with the medical evidence and other evidence in the record."  (AR 21).

The ALJ then determined that Plaintiff had no past relevant work experience (AR 24) but that given her RFC, she could perform a significant number of jobs in the national economy, including packager, salvage laborer, and assembler.  (AR 24-25).  On that basis, the ALJ ultimately concluded Plaintiff was not disabled at any time after January 1, 2022.  (AR 25).

### III.   LEGAL STANDARD

#### A.   Applicable Law

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 423(d)(2)(A).

The Commissioner has established a multi-step sequential evaluation process for determining whether a person's disability has ended.  20 C.F.R. § 416.994(b)(5). This multi-step continuing disability review process is similar to the five-step sequential evaluation process used to evaluate initial claims, with additional attention as to whether there has been medical improvement.

The first step determines whether the claimant has an impairment or combination of impairments that meet or equal the severity of listed impairments set forth at 20 C.F.R. pt. 404, Subpt. P, Appx. 1. 20 C.F.R. §§ 416.920(d), 416.994(b)(5)(i). The second step addresses whether there has been medical improvement in the claimant's condition.  20 C.F.R. § 416.994(b)(5)(ii).

7

Medical improvement is "any decrease in the medical severity" of the impairment that was present at the time the individual was disabled or continued to be disabled. 20 C.F.R. § 416.994(b)(1)(i). A determination that there has been a decrease in medical severity must be based on improvement in the symptoms, signs, or laboratory findings associated with the claimant's impairments. *Id.* If there has been medical improvement, at step three, a determination is made whether such improvement is related to the claimant's ability to perform work—that is, whether there has been an increase in the individual's residual functional capacity. 20 C.F.R. § 416.994(b)(iii). If the answer to step three is yes, the Commissioner skips to step five and inquires whether all of the claimant's current impairments in combination are severe. 20 C.F.R. § 416.994(b)(v).

If there has been no medical improvement or medical improvement is not related to the claimant's ability to work, the evaluation proceeds to step four. At step four, consideration is given to whether the case meets any of the special exceptions to medical improvement for determining that disability has ceased. 20 C.F.R. § 416.994(b)(5)(iv). At step five, if medical improvement is shown to be related to the claimant's ability to work, a determination will be made to assess whether the claimant's current impairments in combination are severe—that is, whether they impose more than a minimal limitation on his or her physical or mental ability to perform basic work activities. 20 C.F.R. § 416.994(b)(5)(v). If the answer to that inquiry is yes, at step six the ALJ must determine whether the claimant can perform past relevant work. 20 C.F.R. §§ 416.994(b)(5)(vi).

Finally, at step seven, if the claimant cannot perform past relevant work, a limited burden of production shifts to the Commissioner to prove there is alternative work in the national economy that the claimant can perform given his age, education, work experience, and residual functional capacity. 20 C.F.R. § 416.994(b)(5)(vii); *Thomas v. O'Malley*, No. 1:24-CV-00192-JLT-HBK, 2024 WL 4729151, at *3 (E.D. Cal. Nov. 8, 2024), *report and recommendation adopted*, No. 1:24-CV-0192-JLT-HBK, 2024 WL 4894679 (E.D. Cal. Nov. 26, 2024). If the claimant cannot perform other work in the national economy, the claimant continues to be disabled; if, however, he or she can perform other work, the ALJ will find that claimant's disability has ended. 20 C.F.R. § 416.994(b)(5)(vii).

"Prior to the final step, the burden to prove disability and continuing entitlement to disability

8

benefits is on the claimant." *Thomas*, 2024 WL 4729151, at *3 (citing 20 C.F.R. § 416.994 and *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)).  There must be substantial evidence that medical improvement has occurred.  42 U.S.C. §§ 423(f)(1).  "If the analysis proceeds to step seven, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work 'exists in significant numbers in the national economy.'" *Thomas*, 2024 WL 4729151, at *3 (citing *Bowen*, 482 U.S. at 146 n.5 and *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012)).

**B.    Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted).  "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).  "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted).  Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).  "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id. (*quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless."

*Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)).  Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.    DISCUSSION

Plaintiff contends that the ALJ erred in crafting the RFC by failing to properly evaluate the January 13, 2022 opinion proffered by Plaintiff's treating psychiatrist, Sadeed Jawad, M.D.  (Doc. 13 at 16-24).  The Commissioner responds that the ALJ's consideration of the medical opinion was proper and supported by substantial evidence.  (Doc. 17 at 4-7).  The undersigned agrees with the Commissioner.

### A.    The ALJ's Treatment of Dr. Jawad's Opinion Was Not Erroneous

#### 1.    Legal Standard

Plaintiff's claim is governed by the agency's revised regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017.  20 C.F.R. § 404.1520c.  The regulations set "supportability" and "consistency" as "the most important factors" when determining the opinions' persuasiveness.  20 C.F.R. § 404.1520c(b)(2).  And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [they] considered the medical opinions" and "how persuasive [they] find all of the medical opinions." 20 C.F.R. § 404.1520c(a)–(b).

The Ninth Circuit has issued the following guidance regarding treatment of physicians' opinions after implementation of the revised regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from your medical sources.").  Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a

treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Accordingly, under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id*. at 787.

In conjunction with this requirement, "[t]he agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Id*. at 792 (citing 20 C.F.R. § 404.1520c(b)). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Id*. at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)).

As the Ninth Circuit also observed,

The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion. *See id.* § 404.1520c(c)(3). Thus, an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id*. § 404.1520c(c)(3)(i)–(v). However, the ALJ no longer needs to make specific findings regarding these relationship factors.

*Id.* at 792. "A discussion of relationship factors may be appropriate when 'two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . . but are not exactly the same.'" *Woods*, 32 F.4th at 792 (quoting § 404.1520c(b)(3)). "In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.'" *Id*. Finally, if the medical opinion includes evidence on an issue reserved to the Commissioner, the ALJ need not provide an analysis of the evidence in their decision, even in the discussions required by 20 C.F.R. § 404.1520c. *See* 20 C.F.R. § 404.1520b(c)(3).

With these legal standards in mind, the undersigned reviews the weight given to Dr. Jawad's opinion.

**B.    Analysis**

In considering treating psychiatrist Dr. Jawad's opinion related to Plaintiff's chronic schizophrenia, the ALJ determined that the opinion was somewhat persuasive. (AR 23). Specifically, the ALJ reasoned as follows:

> On January 13, 2022, psychiatrist Sadeed Jawad, M.D. indicated that, since 2018, Fresno County Department of Behavioral Health had treated the claimant for chronic schizophrenia that had a remitting and relapsing course.  He opined that the claimant's symptoms were likely to continue to impact her functioning, especially at the social level (Exhibit 13F, p. 2). While this statement is vague and unquantified, the limitations of occasional interaction with coworkers and supervisors, and no contact with the public was incorporated into the mental residual functional capacity to accommodate the claimant's moderate impairment in social functioning.  I note that on May 22, 2018, school records indicated the claimant, "struggled to have relationships with adults on campus (Exhibit 4F, p. 5)" and "she struggles to understand the content and context of what others say to her, often causing her to become frustrated and angry (Exhibit 4F, p. 5)."  While current records do not show difficulties with social functioning, as discussed above, the limitations to simple and routine tasks, static work tasks throughout the workday with little deviation, and occasional contact with only supervisors and supervisors, addresses every aspect the claimant's difficulty to the fullest extent possible: social; communication; and cognitive.  This opinion was somewhat persuasive.

(*Id.*).

An ALJ's decision to discredit a medical opinion "must simply be supported by substantial evidence."  *Woods*, 32 F.4th at 787.  Here, the Court finds that substantial evidence supports the ALJ's decision and that the ALJ properly evaluated the supportability and consistency of Dr. Jawad's opinion.

### 1.  Supportability

First, Plaintiff argues that the ALJ's finding that Dr. Jawad's opinion was "vague and unquantified"  demonstrates error because "[r]ather than describe Plaintiff's symptoms, course of treatment, and bouts of remission, and thereby chart a course of improvement, the ALJ improperly singled out a few periods of temporary well-being from a sustained period of impairment and relied on those instances to discredit the opinion of Plaintiff's treating psychiatrist." (Doc. 13 at 18).

In response, the Commissioner argues that the ALJ reasonably determined Dr. Jawad's opinion to be "somewhat persuasive" and appropriately determined its supportability.  (Doc. 17 at

5-6).

"The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

There is substantial evidence in the record to support the weight the ALJ assigned to Dr. Jawad's opinion. Specifically, the ALJ considered the extent to which a medical source supported the medical opinion by noting that the opinion was "vague and unquantified." Dr. Jawad's opinion is brief and does not reference or cite to objective medical evidence or supporting explanations. *See* 20 C.F.R. § 404.1520c(c)(1). "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Ford*, 950 F.3d at 1154 (citing *Thomas v. Barnhart*, 278 F.3d 947, 95 (9th Cir. 2002)). Substantial evidence thus supports the ALJ's reasoning not to fully credit Dr. Jawad's opinion on the basis that Dr. Jawad failed to "explain[] the relevant objective medical evidence." *Stiffler v. O'Malley*, 102 F.4th 1102, 1107 (9th Cir. 2024) (citing *Woods*, 32 F.4th at 791-92).

Nevertheless, the ALJ still included the limitations of occasional interaction with coworkers and supervisors, and no contact with the public in the RFC. (AR 23).

### 2. Consistency

Second, Plaintiff argues that the ALJ failed to consider relevant evidence in analyzing the consistency of Dr. Jawad's opinion. (Doc. 13 at 20).

Plaintiff states that ALJ failed to consider whether Dr. Jawad's opinion was consistent with the following evidence, including: (1) an authorization for in-home supportive services, dated June 1, 2022, showing Plaintiff was approved for 59 hours of services per month to assist in meeting basic needs like household chores, meal preparation, laundry, and bathing, (2) an assessment from Fresno County Mental Health, dated November 3, 2021, reporting continuing symptoms of schizophrenia hindering Plaintiff's ability to communicate effectively and engage in activities of daily living, (3) a psychiatric follow-up note from Dr. Jawad, dated December 22, 2021, reporting that Plaintiff hears voices "twice a week" and maintains the Invega injection, (4) a psychiatric note from Regina Bahten, D.O., dated October 10, 2022, documenting depressive symptoms including unexpected crying

spells, and (5) a psychiatric note from Michele Webber-Klein, N.P., dated October 28, 2022, documenting Plaintiff's intellectual ability and findings that she was distracted, displayed impaired memory, and showed a simplistic thought process. (*Id.* at 20-21).

In response, the Commissioner argues that the ALJ appropriately considered the consistency factor by finding that Dr. Jawad's opinion was consistent with the record to the extent it showed that Plaintiff had only a moderate impairment in social functioning. (Doc. 17 at 6). On this basis, the Commissioner contends that the ALJ appropriately restricted Plaintiff to occasional interaction with coworkers and supervisors and no contact with the public. (*Id.*). The Commissioner further argues that Plaintiff fails to demonstrate that these records show error in the ALJ's finding and does not explain what social limitations she requires that exceed the limitations already assessed by the ALJ. (*Id.*).

"The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

In evaluating the persuasiveness of Dr. Jawad's opinion, the ALJ found it unsupported by the record. Dr. Jawad's opinion provides that "given the chronic nature of the diagnoses her symptoms are likely to continue to impact her functioning especially at the social level." (AR 838). In her reasoning weighing Dr. Jawad's opinion, the ALJ references an Individualized Education Plan from Fresno Unified School District, dated May 22, 2018, that indicates Plaintiff "struggled to have relationships with adults on campus" and "struggles to understand the content and context of what others say to her, often causing her to become frustrated and angry." (AR 23) (citing AR 451). Elsewhere in her decision, the ALJ extensively considered medical and nonmedical sources related to Plaintiff's social functioning, including mental health treatment records (AR 653, 639, 643, 646, 649-50, 653, 655, 662), medication progress notes (AR 823m 825-26, 830-31, 834), and the medical source opinion of consultative psychologist Steven Swanson, Ph.D. (AR 623-29). The ALJ reasoned that "current records do not show difficulties with social functioning" and refers to previous discussion of the evidence related to Plaintiff's social functioning. (AR 23). Despite this finding, the ALJ still included the limitations of occasional interaction with coworkers and supervisors, and

14

no contact with the public in the RFC.  (AR 23).

Plaintiff is correct that the ALJ must not "cherry-pick" instances of no or low symptomology without considering the context, such as instances of high symptomology.  *See Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998) (an ALJ must not "cherry-pick" certain observations without considering their context); *see also Attmore v. Colvin*, 827 F.3d 872, 875 (9th Cir. 2016) (quoting *Tackett*, 180 F.3d at 1098) (the court "cannot affirm . . . 'simply by isolating a specific quantum of supporting evidence,' but 'must consider the record as a whole, weighing both evidence that supports and evidence that detracts'). The undersigned does not concur with Plaintiff, however, that the ALJ committed this error.

While the ALJ did ask questions about the June 1, 2022 authorization for IHSS assistance during the March 23, 2023 hearing (*see* AR 42), she did not explicitly consider this evidence in her opinion.  The IHSS authorization, dated June 1, 2022, shows that Plaintiff is authorized to receive assistance with domestic services, meal preparation, meal clean-up, laundry, shopping for food, dressing, other shopping and errands, bathing and hygiene, and accompaniment to medical appointments.  (AR 397-401).  However, "the ALJ is not required to discuss evidence that is neither significant nor probative." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). The ALJ did consider other evidence that relates to Plaintiff's ability to handle tasks of daily living (AR 19), citing to a January 31, 2022 Disability Determination Explanation (AR 68-85) and a psychiatric review, dated May 2, 2022, from S. Khan, M.D.  (AR 804-18), both of which find a mild limitation to Plaintiff's ability to adapt or manage oneself.  (AR 76, 816).

Next, the ALJ explicitly weighed the office treatment records from Fresno Behavioral Health, observing that "[a]lthough there is some evidence that lends some support for claimant's allegations, her allegations are not entirely consistent with the evidence," specifically that the record shows that while Plaintiff did report hearing critical voices, sleeping during the day, gaining weight, and feeling frustration and anxiety, Plaintiff also "denied auditory or visual hallucinations, paranoia, or other psychotic symptoms," "denied depressive or manic symptoms, behavior issues, or agitation," and that "[m]ental status examinations remained normal." (AR 22) (citing AR 656, 633, 635, 636, 642, 646, 649-50, 654, 659, 662).

15

The ALJ also explicitly considered the psychiatric follow-up note from Dr. Jawad, dated December 22, 2021. (AR 22). The ALJ noted that Exhibit No. 8F, p. 10 (i.e., AR 639), among other evidence, showed that "[m]ental status examinations remained normal." (AR 22). The report indicates that Plaintiff "endorses 'hearing voices' at random times about 2 X a week," but also that Plaintiff "[d]enies depressed mood, anhedonia," "denies any physical symptoms or meds side effects," Plaintiff's behavior was "cooperative," cognition and speech was normal, mood was "normal" and "happy," there was "[n]o evidence of delusions," insight and judgment was both "good as she adheres to meds and appt and avoids subs.," and that Plaintiff's response to medication and lab results was "improved." (AR 639).

The ALJ explicitly considered the psychiatric note from Regina Bahten, D.O., dated October 10, 2022, noting that Plaintiff reported doing well in her classes, that mental status examination was normal (AR 22) (citing AR 830-31), and that she missed a week of college due to depression, now she was going to school again, but crying unexpectedly. (AR 830).

Finally, the ALJ explicitly considers Michele Webber-Klein, N.P.'s psychiatric note, dated October 28, 2022. (AR 19, 22) (citing AR 825-27). The ALJ observed the note that Plaintiff "admits that she cannot read" (AR 825) to be "inconsistent with the longitudinal record." (AR 21). The ALJ further notes that the report shows that Plaintiff "has some fatigue but reports improving," experienced no suicidal ideation, and attended school on the day of the appointment. (AR 21-22) (citing AR 825). Ultimately, the ALJ found that Nurse Webber-Klein's note contributed to a finding that Plaintiff's condition was improving (AR 21) and "[m]ental status examinations remained normal."

The ALJ is not required to discuss every piece of evidence available in the record. *Howard ex rel. Wolff*, 341 F.3d at 1012. Further, contrary to Plaintiff's argument that the ALJ's discussion of Dr. Jawad's opinion is "is legally insufficient and frustrates meaningful review," (Doc. 13 at 17), the identification of specific allegations and evidence contradicting those allegations permitted the undersigned to review the ALJ's reasoning.

Ultimately, the ALJ's decision was supported by substantial evidence. Plaintiff's contentions largely suggest the ALJ should have come to a different conclusion when evaluating the

evidence, but the undersigned may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas*, 278 F.3d at 954; *see also Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004) ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ."). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *See Ford*, 950 F.3d at 1159 ("Our review of an ALJ's fact-finding for substantial evidence is deferential"); *Thomas*, 278 F.3d at 954.

## C. Harmlessness Review

To the extent that the ALJ erred evaluating the persuasiveness of Dr. Jawad's opinion, any such error is harmless.

Courts look to the record as a whole to determine whether the error alters the outcome of the case. *Id.*; *March v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015). An error is harmless "where it is inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115 (internal quotation marks and citations omitted).

While finding Dr. Jawad's opinion only "somewhat persuasive," the ALJ integrated Plaintiff's difficulties with social functioning into Plaintiff's RFC. The ALJ limits Plaintiff to "simple and routine tasks" "with very little deviation." (AR 20-21). The ALJ reasons that "[w]hile current records do not show difficulties with social functioning, as discussed above, the limitations to simple and routine tasks, static work tasks throughout the workday with little deviation, and occasional contact with only supervisors and supervisors, addresses every aspect the claimant's difficulty to the fullest extent possible: social; communication; and cognitive." (AR 23).

Accordingly, it is clear from the record that any error was "inconsequential to the ultimate nondisability determination" and does not provide a basis for reversal. *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins,* 466 F.3d at 885).

## V.    CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, IT IS HEREBY RECOMMENDED as follows:

17

1.      Plaintiff's motion for summary judgment, (Doc. 13), be DENIED;

2.      The final decision of the Commissioner of Social Security be AFFIRMED; and

3.      The Clerk of the Court be DIRECTED to enter judgment in favor of Defendant Frank J. Bisignano, Commissioner of Social Security and against Plaintiff Jocelyn Martinez, and to CLOSE this action.

These findings and recommendations are submitted to the District Judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within fourteen (14) days of service of these recommendations, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Objections, if any, shall not exceed fifteen (15) pages or include exhibits.  Exhibits may be referenced by document and page number if already in the record before the Court.  Any pages filed in excess of the 15-page limit may not be considered.  The District Judge will review the Magistrate Judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **May 18, 2026**                   _____
                                     UNITED STATES MAGISTRATE JUDGE